IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| JUDICIAL WATCH, INC., ) | |
| ) | Civil Action No. |
| Plaintiff, ) | 1:11-cv-00890-JEB |
| ) | |
| v. ) | |
| ) | |
| U.S. DEPARTMENT OF DEFENSE, and ) | |
| CENTRAL INTELLIGENCE AGENCY, ) | |
| ) | |
| Defendants. ) | |

**DEFENDANTS' OPPOSITION TO PLAINTIFF'S MOTION FOR A *VAUGHN* INDEX
AND A STAY OF THE BRIEFING SCHEDULE**

**INTRODUCTION**

On September 26, 2011, defendants moved for summary judgment in this Freedom of

Information Act ("FOIA") case seeking disclosure of highly classified photographs and/or video

recordings taken of Osama bin Laden during or after the May 1, 2011 raid in Pakistan.  As

required by the law of this Circuit, defendants supported their withholdings with detailed *Vaughn*

declarations that described the responsive records to the greatest extent possible on the public

record and explained why the responsive records were properly withheld under Exemptions 1

and 3.  Now, rather than respond to defendants' motion, plaintiff seeks to stay the briefing

schedule and to require defendants to provide a *Vaughn* index.

Plaintiff's request is both puzzling and inappropriate for two fundamental reasons.  First,

defendants already have provided detailed *Vaughn* declarations, which more than satisfy the

requirements of *Vaughn v. Rosen*, 484 F.2d 820 (1973).  As plaintiff is well aware, *Vaughn* and

its progeny impose no requirement of an "index," nor require any one particular format.  Indeed,

4838d7137e3137d1

declarations are routinely used to describe agency withholdings, and district courts routinely

grant summary judgment in FOIA cases based on agency declarations—decisions which are then

affirmed by the D.C. Circuit.  If plaintiff believes the agencies' declarations to be deficient, the

appropriate course would be to oppose defendants' motion for summary judgment on that basis,

not to "stay" the proceedings so that the case that plaintiff itself brought with great urgency

remains in limbo.

Second, the agencies' declarations are not deficient.  Indeed, the declarations address the

questions posited by plaintiff in its motion to stay, and make clear that no further information can

be provided on the public record.  Accordingly, the Court should deny plaintiff's motion, and

either accept the motion to stay as plaintiff's opposition to the pending motion for summary

judgment, or order plaintiff to respond to defendants' motion in accordance with the existing

briefing schedule, which was negotiated at plaintiff's request.[1]

## ARGUMENT

I.    **PLAINTIFF'S MOTION FOR A *VAUGHN* INDEX SHOULD BE DENIED
      BECAUSE DEFENDANTS ALREADY HAVE PROVIDED *VAUGHN*
      DECLARATIONS WHICH PLAINTIFF CAN CONTEST IN ITS
      OPPOSITION TO THE GOVERNMENT'S MOTION FOR SUMMARY
      JUDGMENT.**

The D.C. Circuit requires that agencies demonstrate with sufficient detail that

information withheld under the FOIA falls within the terms of a statutory exemption.  *Vaughn v.*

*Rosen*, 484 F.2d 820, 826-27 (1973) (citing *EPA v. Mink*, 410 U.S. 73 (1973)).  It is well

established, however, that there is no set formula by which an agency can satisfy the

---

[1]To the extent the Court resolves this motion after the deadline for plaintiff to submit its opposition brief, the court should order plaintiff to respond to the defendants' motion forthwith, on a reasonable date of the court's choosing.

requirements of *Vaughn*, and indeed, agencies often satisfy their burden through the submission

of sworn declarations.  *See, e.g.*, *Gallant v. NLRB*, 26 F.3d 168, 172 (D.C. Cir. 1994) (holding

that agency declarations satisfied *Vaughn*, and that "materials provided by an agency may take

any form so long as they give the reviewing court a reasonable basis to evaluate the claim"); *Keys*

*v. U.S. Dept. of Justice*, 830 F.2d 337, 349 (D.C. Cir. 1987) (holding that declarations describing

redacted documents were sufficient, as "it is the function, not the form" of the submission that is

important).[2]

In this case, the defendant agencies filed extensive *Vaughn* declarations in support of

their motion for summary judgment.  *See* Declaration of John Bennett, Director, National

Clandestine Service, Central Intelligence Agency; Declaration of William T. Kammer;

Declaration of William H. McRaven (in classified and redacted form); Declaration of Robert B.

Neller.  To the extent that plaintiff contends those declarations are insufficient to carry the

government's burden, are less detailed than required to justify the claimed exemptions, or are

lacking in some other way so as to prevent the entry of summary judgment, that is for plaintiff to

argue in opposition to defendants' motion for summary judgment.  *See, e.g., Campbell v. DOJ*,

164 F.3d 20, 30-31 (D.C. Cir. 1998); *Int'l Counsel Bureau v. DoD*, 723 F. Supp. 2d 54, 56, 63-65

(D.D.C. 2010).  It is not a basis, however, to stay the litigation plaintiff itself brought in order to

wait for a "Vaughn index" that the government already has provided.

---

[2]Courts frequently use the term "Vaughn index" as shorthand for the government's
submissions justifying its withholdings in a FOIA summary judgment proceeding.  *See., e.g.,*
*Keys*, 830 F.2d at 349 (finding declarations sufficient to satisfy "Vaughn index" requirement).

II.     **THE GOVERNMENT'S DECLARATIONS PROVIDE AS MUCH DETAIL AS CAN BE PROVIDED ON THE PUBLIC RECORD AND ESTABLISH WITH PRECISION THE BASIS FOR WITHHOLDING ALL RESPONSIVE RECORDS.**

Plaintiff's motion for a stay is all the more puzzling because the information plaintiff claims that it lacks is set forth expressly in the declarations.  Indeed, there is no mystery about "which records pertain to which classification category" of Executive order 13,526.  *See* Pl. Mot. at 3.  Nor is "[p]laintiff . . . left to guess which arguments Defendants are making with respect to each record or category of records. " *Id*. at 4.[3]  Rather, the declarations are quite clear that "*all* of the [responsive] records pertain to intelligence activities and/or methods as well as the foreign relations and foreign activities of the Untied States," as "*all* of the responsive records are the product of a highly sensitive, overseas operation that was conducted under the direction of the CIA."  Bennett decl. at ¶ 21 (emphasis added).  *See also* Bennett decl. at ¶ 12 ("these responsive records [referring to the 52 unique records described in the preceding paragraph] reflect information pertaining to classified CIA intelligence activities and methods, as well as

_____

[3]  Plaintiff's contention that defendants described the responsive records as falling into five distinct categories (Pl.'s Mot. at 2) distorts defendants' description of the records, which stated:

> These records are photographs and/or video recordings taken of UBL on or about 1 May 2011 . . . .  These records contain post-mortem images of UBL's body.  As a result, many of them are quite graphic, as they depict the fatal bullet wound to UBL's head and other similarly gruesome images of his corpse.  Many of the images were taken inside of UBL's compound in Abbottabad, Pakistan, in which he was killed, while others were taken as his corpse was being transported from the Abbottabad compound to the location were he was ultimately buried at sea.  Several other images depict the preparation of his body for burial as well as the burial itself.  Some of the responsive photographs were taken so that the CIA could conduct a facial recognition analysis in order to confirm that the body of the deceased individual was that of UBL.

Bennett decl. at ¶ 11.

information pertaining to classified military plans and operations and sensitive foreign activities of the United States."); Bennett decl. at ¶ 23 ("all of the responsive records" could be expected to cause "exceptionally grave damage to the national defense and foreign relations of the United States."); Bennett decl. at ¶ 28 (the harm described above "applies to all of the responsive images"); Bennett decl. at ¶ 34 ("the responsive records are subject to the protections of both the National Security Act and the CIA Act"); McRaven decl. at ¶ 3 ("the official release of the responsive records could reasonably be expected to:  (a) make the special operations unit that participated in this operation and its members more readily identifiable in the future; (b) reveal classified Sensitive Site Exploitation Tactics, Techniques, and Procedures and other classified information specific to special operations; and (c) reveal the methods that special operations forces use for identification of captured and killed personnel so that the enemy could develop counter-measures to defeat future military operations."); Neller decl. at ¶ 6 ("I believe that release of the responsive records will pose a clear and grave risk of inciting violence and riots against U.S. and Coalition forces.").  In addition to explaining the withholding rationales applicable to all responsive documents, the declarations also addressed specific rationales for withholding certain types of records.  *See* Bennett decl. at ¶ 29 (release of post-mortem photographs of UBL that were used to conduct facial recognition analysis "would reveal information about intelligence methods and activities"); McRaven decl. at ¶¶ 5,6 (release of photographs depicting equipment and tactics, techniques, and procedures used by the particular special operations unit during the operation would reveal unique information about the unit, making members readily identifiable in the future and, therefore, placing them and their families at risk of being targeted by the enemy).

Plaintiff cites as an example of its confusion the images of bin Laden's burial.  According to plaintiff, defendants' declarations do not state whether these images "must be withheld because they allegedly pertain to military plans, intelligence sources or methods, or foreign relations.  Nor do Defendants state whether these particular images must be withheld because they would inflame overseas populations or because their release allegedly would reveal intelligence activities and methods or the identities, equipment, or TTPs of Seal Team 6."  Pl.'s Mot. at 3-4.  But responsive images of bin Laden's burial are, of course, included in Mr. Bennett's references to "all" responsive records cited above.  *See* Bennett decl. at ¶ 11. Moreover, Mr. Bennett specifically said, "the release of graphic and posthumous images of UBL, including images of his burial, could be interpreted as a deliberate attempt by the United States to humiliate the late al-Qa'ida leader," which "could trigger violence, attacks, or acts of revenge against the United States homeland or its citizens, officials, or other government personnel living or traveling overseas."  Bennett decl. at ¶ 27.

Given that the government's declarants specified precisely which portions of the Executive Order were being invoked to withhold the responsive records, and included great detail as to both the contents of the records and why they satisfy each provision of the Executive Order relied upon to classify them at the Top Secret level, it is unclear what further information plaintiff could require in order to contest the withholdings under Exemptions 1 and 3.  Indeed, Mr. Bennett already has sworn that he "cannot further describe [the responsive records'] content or the circumstances in which they were obtained on the public record without potentially causing harm to national security.  Among other things, release of additional descriptive information concerning the responsive records could expose whether the CIA utilized certain

intelligence methods, equipment, tools, technical capabilities, or other operational methods in the

course of and immediately after effectuating this highly sensitive operation." Bennett decl. at ¶

12. Because the defendant agencies have been as clear as they can be about the basis for their

withholdings, and, as plaintiff already is aware, the government is unable to provide any further

detail on the public record, it is unclear what plaintiff hopes to achieve through its current

motion. Accordingly, the Court should either accept plaintiff's motion for a stay as its opposition

to the government's motion for summary judgment, or deny plaintiff's motion and instruct

plaintiff to comply with the current briefing schedule.[4]

---

[4] The original briefing schedule in this case was negotiated and agreed to by the parties.
Dkt. No. 13. On October 20, 2011, plaintiff filed an unopposed motion for an extension of time
in which to file its opposition to defendants' motion for summary judgment, based on "the
complexity of the withholdings" asserted in defendants' declarations as well as scheduling
conflicts. Dkt. No. 16. Had government counsel known that plaintiff intended to seek a stay of
the proceedings rather than respond to the government's motion on November 18, 2011, as
plaintiff represented it would do in its extension motion, they would not have consented to
plaintiff's motion.

## CONCLUSION

For all of the foregoing reasons, the Court should deny plaintiff's motion for a *Vaughn*

index and a stay.

Respectfully Submitted,

TONY WEST
Assistant Attorney General

IAN H. GERSHENGORN
Deputy Assistant Attorney General

RONALD C. MACHEN JR.
United States Attorney


 /s/ Elizabeth J. Shapiro
ELIZABETH J. SHAPIRO (D.C. Bar No. 418925)
MARCIA BERMAN ((PA Bar No. 66168)
United States Department of Justice
Civil Division, Federal Programs Branch
20 Massachusetts Avenue N.W.  Room 7132
Washington, D.C.  20530
Tel.: (202) 514-5302
Fax: (202) 616-8470
Email: elizabeth.shapiro@usdoj.gov
           marcia.berman@usdoj.gov
Attorneys for Defendants

## CERTIFICATE OF SERVICE

I hereby certify that on November 18, 2011, a true and correct copy of the foregoing Opposition to Plaintiff's Motion for a *Vaughn* Index and a Stay of the Briefing Schedule was served upon plaintiff's counsel of record at the address listed below:

Via ECF:
James F. Peterson
Michael Bekesha
Paul J. Orfanedes
JUDICIAL WATCH, INC.
425 Third Street, SW
Suite 800
Washington, DC 20024
(202) 646-5172
Fax: (202) 646-5199
Email: jpeterson@judicialwatch.org
        mbekesha@judicialwatch.org
        porfanedes@judicialwatch.org


 */s/ Elizabeth J. Shapiro*
ELIZABETH J. SHAPIRO